ALDRICH and others, plaintiffs in error, *vs.* MAITLAND, defendant in error.

Where the purchaser at Sheriff's sale, by a fraudulent combination with the Sheriff and judgment debtor to prevent competition at the sale, is enabled to purchase property at much less than its value, the sale will be held void as against creditors.

Where a junior execution creditor becomes the purchaser of chattels, before fraudulently sold upon a prior execution, the mere inadequacy of the sum bid by him will not affect his purchase. The cloud cast upon the title by the former sale, is a sufficient answer to the objection of inadequacy.

The docket of a Justice stated that the cause was called, and judgment rendered on the *return of process.* "Return of process" held to mean the return day of the process, and not the time of its actual return.

A statement of the docket that judgment was rendered in favor of the plaintiff —there being only one defendant—sufficiently shows that judgment was rendered against the defendant.

Error to Jackson Circuit.

*A. Blair*, for plaintiffs in error.

*Higby & Foote*, for defendant in error.

By the Court, DOUGLASS, J.

This is an action of replevin for five stacks of wheat brought by the plaintiffs in error, who were partners under the name of Aldrich & Co., against Maitland. The action was originally commenced in Jackson County Court, where

it was tried before the Hon. E. T. Gridley, County Judge, without a jury, and judgment rendered in favor of Maitland for $341.17 damages and costs. Aldrich & Co. thereupon removed the cause to Jackson Circuit Court by certiorari, where the judgment of the County Court was affirmed. To reverse the latter judgment, Aldrich & Co. have removed the cause into this Court by writ of error. The facts of the case, as deducible from the evidence, which is fully returned by the County Judge, are briefly these: Maitland was the plaintiff in two executions against one Loomis, both of which were levied upon the wheat in question, which was on the farm of Loomis, in the town of Concord. The execution first levied was in the hands of Mr. Welling, Sheriff of Jackson County, and was issued upon a judgment of Calhoun County Court for $36.23. The other execution was in the hands of Joel Taylor, a constable of Jackson County, and was issued upon a judgment rendered by D. E. Wright, a Justice of the Peace for that County, for $61.35. The wheat levied upon was worth over $300, and being a marketable article, the presumption would certainly be, that if fairly sold it would bring enough to satisfy both executions. Maitland resided at Albion, Calhoun County. On the 20th July, 1850, the Sheriff wrote him that he should advertise the property to be sold on the execution in his hands, on the 2d August then next, at one o'clock, P. M. In the forenoon of July 22d, he posted notices in Concord that the sale would take place on the day and at the hour mentioned in this letter. Afterwards he had some conversation with Mr. Collins, one of the firm of Aldrich & Co., who were merchants at Concord, about changing the hour of sale, but returned to Jackson without making any change in the notices. In the afternoon of the same day, Loomis came to Jackson, and there had an interview with the Sheriff, which resulted in his drawing up new notices for a sale to take place at nine, A. M., instead of one, P. M., of August 2d. These notices the Sheriff enclosed in a letter to Collins, requesting him

to tear down the old notices, and post up the new ones enclosed. This letter Loomis took to Collins, who did as requested. Maitland was not advised of this change in the hour of sale, and, acting upon the advice he had previously received from the Sheriff, and with the view of having the sales take place at the same time, he had directed Taylor, the constable, to post notices for the sale of the wheat on the Justice's execution, at one o'clock, P. M., of August 2d, and Taylor had obeyed this instruction. At nine, A. M., of that day, the Sheriff proceeded to sell the wheat on the first execution; both Maitland and the constable, misled by the previous information, being absent, and it was struck off to Aldrich & Co. for $41.75, they being the highest, and indeed the only bidders. Aldrich & Co. paid the amount of their bid to the Sheriff, who paid it into Court, and returned the executions satisfied. It is in virtue of this purchase that Aldrich & Co. claim the wheat in this action. Maitland and the constable arrived at Concord about one o'clock, P. M., of the day of this sale. Finding what had been done, the sale on the Justice's execution was postponed till the 5th of August, at which time the constable sold the same wheat, which was still on the premises of Loomis, and it was struck off for $25 to Maitland, who, thereupon, took and kept possession of it until it was replevied from him by Aldrich & Co. in this action,

From the circumstances above stated respecting the proceedings under the first execution, and which are all established beyond controversy, and also from various other facts and circumstances established by the evidence, which it would require too much time to mention in detail, we think the conclusion is irresistible, that the change in the hour of sale under this execution was made in pursuance of a combination or conspiracy, to which Aldrich & Co., Loomis and the Sheriff were parties, which had for its object just what was accomplished by it, viz. : a sale of the whole wheat to

Aldrich & Co., in the absence of Maitland and of all competition which could be avoided, for a sum barely sufficient to satisfy this execution—the wheat to be held by Aldrich & Co., in part at least for the benefit of Loomis. Is such a transaction valid as against creditors? The law makes all a man's property, not exempted from execution, subject to the payment of his debts; creditors having liens upon specific property being entitled to payment according to the priority of those liens. It will not tolerate any device or subterfuge which is intended to divert the debtor's property from that purpose. Fraud upon creditors may be perpetrated under the forms of law, as well as by other means; and there is nothing in the nature of an execution sale which exempts it, when tainted with such fraud, to which the purchaser is a party, from the same infirmity which attaches to other fraudulent transfers of the debtor's property. If Aldrich & Co. had acted in good faith, the sale in question, though for a price so inadequate as, considering the marketable nature of the property, to indicate misconduct on the part of the Sheriff, it would probably have been held valid when called in question collaterally, as in this action. But they do not come here with clean hands. The sale to them was effected by means of the device of changing the hour of sale, to which they were parties, which device was resorted to for the very purpose of enabling them to purchase the property in part for the benefit of the debtor, at a grossly inadequate price, and thus defeat the lien of Maitland under the constable's execution. Such a transaction was a gross fraud upon the rights of Maitland. We think the authorities fully sustain us in saying, that as against Maitland the sale was wholly void, and passed no title to Aldrich & Co. The cases upon this subject are generally too complex in their facts to admit of more than a mere citation. I may be excused for a brief statement of one or two of them. In Walter *vs.* Gernant (1 *Harr. Penn. R.*, 515), the action was trespass for

seizing and selling the plaintiff's goods. The plaintiff had purchased the goods at a sale on execution against one Guenther. Afterwards the defendant, as Sheriff, had seized and sold the goods as Guenther's property, to satisfy another execution against him.

There being evidence which rendered the instruction appropriate, the Court charged the jury in substance, that if Walter was guilty of falsehood or trick to prevent persons from bidding at the sale; if he falsely told them that he was bidding under an arrangement for their benefit, or with the design of leaving the goods with Guenther as an act of benevolence, then the purchase made by him was fraudulent and void, and would not vest the title in him so as to prevent them from being sold as Guenther's property by Guenther's execution creditors. And this instruction was held on error to be correct. In Stovall *vs.* The Farmers' & Mechanics' Bank of Memphis (8 *S. and M.*, 305), an execution in favor of the Bank had been levied upon certain negroes as the property of one Jenkins. Stovall claimed them as purchaser at a previous sale on execution against Jenkins. The case was an issue formed under the local laws of Mississippi, to try Stovall's right to the slaves, which depended upon the validity of the execution sale to him. The sale was held void as against the Bank, on the ground that one Quarles, by connivance with Jenkins and Stovall, had induced persons not to bid for the property, whereby Stovall had purchased it for two thirds its value, by which Jenkins was to be benefited. And it was further held, that even though Stovall had paid his own money at the sale, he would have no right to retain the property purchased as security for the money he had paid. See also White *vs.* Trotter (14 *S. and M.*, 30); Trimble *vs.* Turner (13 *Ib.*, 348); Nesbitt *vs.* Dallan (7 *Gill. & John.*, 494); Brodie *vs.* Seagraves (1 *Tayl.*, 144); Denn *vs.* Lecony (*Coxe*, 39).

27

As to the sale on the Justice's execution, we think that was valid, and vested a good title to the wheat in Maitland. The cases of Walter *vs.* Gernant, and Stovall *vs.* The Farmers' and Mechanics' Bank of Memphis, already cited, are authorities to show that, under the circumstances, it was competent for Maitland to treat the Sheriff's sale as void, and without first having obtained an order setting it aside, proceed with the sale under the constable's execution; and we know of no principle or rule of law which would prevent his doing so. If the sale under such circumstances was likely to result in a sacrifice of the property, to the injury of Loomis, the execution debtor, it was for him, if innocent of participation in the fraud of the first sale, to interfere in the proper mode to prevent such a result. The injury was one of which Aldrich & Co. cannot complain. There is no ground for saying that the constable's sale was fraudulent. So far as appears, it was fairly and honestly conducted. The inadequacy of the price at which the wheat was struck off to Maitland, is fully explained by the circumstance that a cloud had been cast upon the title by the fraudulent sale to Aldrich & Co., and that whoever purchased, was buying a vexatious litigation. If we are correct in the conclusion that the Sheriff's sale to Aldrich & Co. was void as against Maitland, and that Maitland acquired a valid title to the wheat by his purchase at the sale by the constable, it is clear that, looking to the substantial merits of the case alone, without inquiring as to any alleged errors, or to the admission or rejection of testimony, the County and Circuit Courts were correct in rendering judgment in favor of Maitland for the full value of the wheat.

We will now proceed to inquire whether the judgment below ought to be reversed, on the ground of any errors committed in the admission and rejection of evidence. On the trial, Maitland offered in evidence a certified transcript

of the docket of Justice Wright, to prove the judgment in his favor and against Loomis, upon which the execution to the constable was issued. To the admission of this evidence the plaintiffs objected, on the ground that it did not appear therefrom that the cause was called and the judgment rendered on the return day of the summons by which the suit was commenced. The Justice's docket, as appeared from the transcript, stated that the cause was called on and judgment rendered on *the return of process.* By "return," was evidently meant return day, and not the actual return of process. The two forms of expression are very frequently used as synonymous. It was also objected that it did not appear against whom the judgment was rendered. This objection is equally frivolous. The docket stated that the judgment "was rendered in favor of John Maitland, the plaintiff," and, as it clearly appeared therefrom that Loomis was the sole defendant, we think it was sufficiently certain that the judgment was against Loomis. We can see nothing in the still further objection, that the certificate of the Justice to the transcript, viz.: "that it was a true copy of all the proceedings had before him in the cause," was defective, because it did not state that it was a transcript of the judgment and proceedings. We think the several objections to the transcript were properly overruled by the County Court. In addition to the testimony of witnesses as to the proceedings under the execution from the Calhoun County Court, Maitland offered to read in evidence the transcript of an order, granted upon his motion and during the pendency of the present suit, vacating and setting aside the Sheriff's sale under the execution, on the ground of fraud. Various objections were made to the admission of that transcript, which were overruled by the County Judge, and the transcript was received as the return states, not as conclusive between the parties, but as evidence in connection with the facts proved of the fraud in the Sheriff's sale. It is difficult to understand how

the order could have any effect as evidence for such a purpose. If admissible at all, it was entitled to the full force and effect of an adjudication upon the subject matter. But, in the view we take of this case, we do not feel called upon to express any opinion as to the admissibility of that order. As we have already said, the other testimony furnishes the most convincing proof of the fraudulent character of the Sheriff's sale. If this order had been rejected, it could not possibly have changed the result of the cause. In cases of certiorari, the statute requires us to give judgment as the right of the matter may appear, without regarding technical omissions, imperfections, or defects in the proceedings before the County Court, not affecting the merits. (*L.* 1849, *p.* 290, § 75. *See L.* 1841, *p.* 114, § 132.) And under similar statutes it has been repeatedly held that the return to the certiorari is not to be treated as a bill of exceptions, but as more in the nature of a case to set aside a verdict or a report of referees, and that the Court will examine the whole case, and if they can see that substantial justice has been done, notwithstanding the alleged error, they will not interfere. Thus, they will not reverse a judgment on the ground of the admission of improper evidence to establish a fact which is clearly proved by other testimony of a competent character. (*Bort.* vs. *Smith*, 5 *Barb. S. C. R.*, 283; *Spencer* vs. *The Saratoga & Washington R. R. Co.*, 12 *Ib.*, 382; *Brock* vs. *Waterbury*, 13 *Ib.*, 116; *Daniels* vs. *Mosher*, 2 *Gibbs; Mich.*, 283.)

It results from these views, that the judgment below must be affirmed with costs.

Present, GREEN, MARTIN, WING, COPELAND and DOUGLASS, J. J.